# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 14, 2017

Plaintiff-Appellant,

v

No. 332358
Wayne Circuit Court
LC No. 15-009000-01-FC

DWIGHT LEMAR YOUNG,

Defendant-Appellee.

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

The prosecution appeals as of right the trial court's order of dismissal. Defendant was charged with possession with intent to deliver more than 1,000 grams of cocaine, MCL 333.7401(2)(a)(*i*), possession of more than 1,000 grams of cocaine, MCL 333.7403(2)(a)(*i*), possession of marijuana, MCL 333.7403(2)(d), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant filed a motion to suppress evidence, arguing that the search warrant used to recover evidence of cocaine, marijuana, firearms, and large sums of cash, was not supported by probable cause. The trial court granted the motion and then entered an order of dismissal. We reverse.

## I. BACKGROUND

This case arises from an investigation conducted by Officer William Morrison with the Detroit Police Department. Morrison received information from a confidential informant that large amounts of cocaine and marijuana were being sold from a house in Detroit either owned or controlled by defendant who resided in Warren. Morrison conducted a two-day investigation of the Detroit house, the Warren house, defendant, and his wife prior to preparing an affidavit in support of his request for a warrant. The magistrate approved the warrant for the two houses and searches ensued. Cocaine, marijuana, and firearms were found at the Detroit house. Firearms and a large sum of money were found at the Warren house. The defendant filed a Motion to Suppress. The motion argued that the warrant was constitutionally defective and that the good faith doctrine was inapplicable. The prosecution orally argued that the magistrate appropriately issued the warrant based upon its supporting affidavit and the good faith doctrine was applicable to the circumstances of this case. The trial court granted the defense motion and a timely appeal was filed.

## II. THE SEARCH WARRANT

-1-

The prosecution argues that the facts stated in the affidavit established a substantial basis for inferring the probability that evidence of a crime would be found at defendant's two houses. We agree.

"[A]ppellate scrutiny of a magistrate's decision [to issue a search warrant] involves neither de novo review nor application of an abuse of discretion standard." *People v Martin*, 271 Mich App 280, 297; 721 NW2d 815 (2006), quoting *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). This is because "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts." *People v Keller*, 479 Mich 467, 474; 739 NW2d 505 (2007) (citations and quotation marks omitted). This Court's duty "is simply to ensure that the magistrate had a substantial basis for conclud[ing] that probable cause existed." *Id*. at 475 (citations and quotation marks omitted). This Court reviews a trial court's findings of fact in a suppression hearing for clear error, but the ultimate decision on a motion to suppress is reviewed de novo. *People v Frederick (On Remand)*, 313 Mich App 457, 464; 886 NW2d 1 (2015). A decision is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

A magistrate may not issue a search warrant unless probable cause exists to justify the search. US Const, Am IV; Const 1963, art 1, § 11; MCL 780.651(1); *People v Waclawski*, 286 Mich App 634, 697–698; 780 NW2d 321, 361 (2009). "Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place." *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012), citing *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000). A finding of probable cause must be based on "facts presented to the issuing magistrate by oath or affirmation," and "[w]hen probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *Waclawski*, 286 Mich App at 698. "The affiant may not draw his or her own inferences, but rather must state matters that justify the drawing of them." *Martin*, 271 Mich App at 298. With that said, "the affiant's experience is relevant to the establishment of probable cause." *Waclawski*, 286 Mich App at 698, citing *People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997). A magistrate's finding of probable cause must be based on all the facts related in the affidavit. MCL 780.653; *Keller*, 479 Mich at 482. "When reviewing a search warrant affidavit, we must read it in a 'common sense and realistic manner,' not a crabbed or hypertechnical manner." *People v Mullen*, 282 Mich App 14, 27; 762 NW2d 170 (2008), quoting *People v Whitfield*, 461 Mich 441, 444; 607 NW2d 61 (2000).

When viewing all the facts in the search warrant affidavit in a common-sense manner, we conclude that the search warrant was supported by probable cause. Turning first to Morrison's investigation, the assertions in the affidavit would allow a judge or magistrate to conclude that there was a substantial basis to infer a fair probability that evidence of the crime was in the stated place. *Brown*, 297 Mich App at 675. According to the search warrant affidavit, Morrison observed four suspected drug transactions in two days. Over those two days, Morrison conducted a surveillance of the Detroit house, and another house in Warren where defendant resided. Over the two days, Morrision observed three short-stay visitations at the Detroit location that he averred in the affidavit were indicative of drug trafficking. In each instance defendant entered the residence using a key, connoting control of the premises. After the first

short-stay trip, the suspected buyer walked out of defendant's Detroit house with a plastic bag in his hand. Morrison then witnessed two more short-stay trips the next day, although he did not see any other bags. Morrison observed defendant engaging in activity in a party store parking lot known for drug trafficking involving a male suspected as a low level drug seller leave his post loitering in front of a party store to briefly enter the defendant's vehicle. Upon exiting, the male returned to his loitering post. Morrison confirmed that defendant's wife owned the Detroit house, and that defendant and his wife resided at the Warren house. Finally, Morrison searched the law enforcement database and learned that defendant and his wife owned at least six vehicles (including a Maserati), one motorcycle, and two houses. When reading this information from the search warrant in its entirety, and in a common-sense manner, there is a substantial basis for inferring a fair probability that evidence of drug dealing existed at the Detroit house. *Brown*, 297 Mich App at 675.

Defendant also argues that the search warrant lacked probable cause in relation to the Warren house because there was no indication of drug-related activity on the record, including from Morrison's investigation or the confidential informant. This argument is without merit. This Court will uphold the search of a suspected drug dealer's home when there is probable cause that he conducts drug transactions out of another house or business. See *People v Nunez*, 242 Mich App 610, 614-615; 619 NW2d 550 (2000); *Darwich*, 226 Mich App at 639-640. In this case, Morrison stated in the affidavit that in his experience "mid and high-level drug dealers often stash large amounts of their narcotics proceeds at their residences that are located in the suburbs or otherwise far away from their sales/drug stash locations to avoid detection by law enforcement." Therefore, the search warrant was supported by probable cause for the Detroit house, where the transactions occurred, and the Warren house, where defendant resided.

This, however, does not end the inquiry. Even if there was insufficient evidence from Morrison's investigation alone to support the search warrant, there was also information supplied from a confidential informant.

If a search warrant affidavit is based in part on information supplied by a confidential informant, the affidavit must contain "affirmative allegations from which the judge or district court magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b); see also *People v Echavarria*, 233 Mich App 356, 365; 592 NW2d 737 (1999). An independent police investigation that verifies information provided by an informant can also support the issuance of a search warrant. *Waclawski*, 286 Mich App at 699; see also *People v Powell*, 201 Mich App 516, 523; 506 NW2d 894 (1993).

The trial court erred when it determined that the search warrant affidavit failed to assert information indicating that the informant had personal knowledge of criminal activity and that he was either reliable or credible. "The personal knowledge element should be derived from the information provided or material facts, not merely a recitation of the informant's having personal knowledge." *People v Stumpf*, 196 Mich App 218, 223; 492 NW2d 795 (1992). The confidential informant told the affiant, Morrison, that he was inside the home in Detroit, and the affidavit indicated that "on several, recent occasions . . . [he] observed hundreds of grams of cocaine stored at the dwelling as well as transactions involving the sale of [cocaine]." Additionally, the affidavit provided, according to the informant, that the house in Detroit was

either owned or controlled by defendant, though defendant did not reside there, as it was used for the "frequent sale of large amounts of cocaine to various lower level drug dealers." The informant also gave a physical description of defendant and confirmed his identity using a photograph. Finally, the informant said that defendant drove a late model Dodge Ram truck and a silver mini-van. The affidavit did not provide a mere recitation that the informant had personal knowledge of criminal activity. Instead, the affidavit indicated that the informant observed "hundreds of grams of cocaine" and drug sales inside the Detroit home, as well as giving other information about defendant, including his residency, identity, and vehicle information. Thus, according to the search warrant affidavit, the informant spoke from personal knowledge of defendant's drug activity.

The search warrant affidavit also established the informant's reliability, and it did so in more than just conclusory terms. Specifically, the affidavit indicated "the informant has proven him/herself credible and reliable by providing past information that has led to the confiscation of controlled substances and five-figure amounts of suspected drug money." The affidavit further provided that the "[a]ffiant has also been able to corroborate additional information from the [i]nformant that has aided in the furtherance of the ongoing investigations of several other drug distributors." Thus, the affiant does not merely state that the informant is reliable, but he provides details about the informant's past involvement in police investigations. Moreover, the informant in this case is not an anonymous tipster, but an informant that has worked with law enforcement on multiple investigations. Importantly, the affidavit explained that the informant aided in the confiscation of controlled substances and aided officers in confiscating large sums of drug money in the past. Therefore, the affidavit contains allegations showing the informant's personal knowledge and reliability.

While it is sufficient to meet the requirements of MCL 780.653(b) through affirmative allegations of the informant's personal knowledge and reliability, the affidavit also established the informant's credibility. Morrison corroborated much of the informant's information, including the fact that defendant had control over the Detroit house by use of a key to lock the door and gate, that defendant was residing at another location and only made trips to the Detroit house, and that defendant drove a Dodge Ram and silver mini-van. Morrison observed the truck and the mini-van at the Detroit house—the same house defendant entered using a set of keys. Thus, these were all facts first provided by the informant and later corroborated by Morrison. Additionally, the informant claimed that cocaine sales took place at the Detroit house. Thereafter, Morrison observed three individuals on two separate days engage in what appeared to be short-stay trips, which Morrison averred was consistent with narcotics activity. In fact, Morrison observed one individual walk out of the Detroit house with a plastic bag. In addition to the observation of three suspected buyers, Morrison followed defendant to a party store and observed similar activity in the parking lot. After defendant arrived in the parking lot of the party store—"a perennial location for street narcotics sales"—a man got into the passenger seat of defendant's vehicle and then exited seconds later. Then, defendant departed from the parking lot and headed back to his home in Warren. This activity was consistent with the informant's information, and it further proves there was probable cause to issue the search warrant.

Because the search warrant was supported by probable cause, this Court need not address the prosecution's argument regarding the good-faith exception to the exclusionary rule.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro